2024 IL App (2d) 230496-U
No. 2-23-0496
Order filed February 9, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-1016 |
| DOUGLAS R. BONCOSKY, | ) ) | Honorable Michael E. Coppedge, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not err in granting the State's petition to deny defendant pretrial release, based on its finding that no conditions could mitigate his real and present risk of willful flight.  Affirmed.

¶ 2    In this interlocutory appeal under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023),

defendant, Douglas R. Boncosky, appeals from the circuit court's order granting the State's

petition to deny defendant pretrial release and ordering him detained pursuant to Public Acts 101-

652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Defendant argues that the circuit court erred in finding that the State met its burden of showing that no conditions could mitigate his real and present risk of willful flight. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On October 30, 2023, the State charged defendant with aggravated identity theft—elderly—second or subsequent (720 ILCS 5/16-30(b)(1) (West 2022) (Class X)), theft—unauthorized control knowing to deprive—exceeding $1 million (720 ILCS 5/16-1(a)(2)(B) (West 2022) (Class X)), financial exploitation—elderly person (720 ILCS 5/17-56(a) (West 2022) (Class 1)), and forgery—makes or alters document (720 ILCS 5/17-3(a)(1) (West 2022) (Class 3)). It alleged that, between August 2019 and August 2023, defendant stole $1.9 million from his memory-impaired aunt, Carroll Merritt, over whom he had a power of attorney, using unauthorized checks and wire transfers to himself and his business, Americas Best Bath Company.

¶ 5     A probable cause statement filed on October 30, 2023, alleged that, once an investigation by Bank of America commenced, defendant attempted suicide and was currently undergoing outpatient therapy to address his mental health. Defendant had recently sold all of his business's assets, as well as his Illinois residence, to move to Florida in November 2023. It further alleged that defendant had expressed interest in changing his name and had already changed his phone number to a Florida number. A probation-and-court-services-department form stated that

---

[1]The Act has also been referred to as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public acts.

defendant was 54 years old, lived with his girlfriend in a rental residence in Barrington for 9 years, was unemployed for 3 weeks, and was previously employed by his company (which he had closed down after 13 years, with a salary listed as "LOST MONEY"). The document also noted that defendant owned a 2024 Volkswagen Atlas vehicle.

¶ 6     At an October 31, 2023, hearing, defendant supplied an affidavit of assets and liabilities, asking the court to appoint the public defender. The affidavit stated that defendant owned a $50,000 vehicle, had $26,000 in accounts subject to withdrawal, and $2000 in cash and other personal property. He represented that he owed $50,000 in credit card debt and $500,000 in business debt. When questioned by the court, defendant testified that he also had $2500 in a business checking account. His company, Americas Best Bath Company, had gross receipts of $2.6 or $2.7 million in the past year, but there was no pass-through income to defendant. He testified that he had losses "for years." The court denied his request to appoint the McHenry County Public Defender for trial but appointed the office for purposes of the detention hearing.

¶ 7                              A. State's Petition

¶ 8     On October 31, 2023, the State petitioned to deny defendant pretrial release, arguing that defendant had been charged with detainable offenses—aggravated identity theft, theft, and financial exploitation—that the proof was evident or the presumption great that he committed the charged offenses, he had a high likelihood of willful flight, and that no condition or combination thereof could mitigate defendant's real and present risk of willful flight.

¶ 9     At the hearing on the State's petition, the State argued that defendant should be detained based on his flight risk, asserting that it possessed police reports, as well as emails and letters by defendant, that reflected the following. An investigation commenced after defendant attempted suicide and wrote a letter. The victim is 74 years old, lives in a memory care facility, and is

defendant's aunt. Defendant had a position of trust with her. Addressing willful flight, the State asserted that defendant had taken several steps indicative of flight. Specifically, while the investigation was pending, he sold his business, sold his home, made statements that he intended to move to Florida in the first week of November, changed his phone number to a Florida number, and expressed interest in changing his name.

¶ 10 Defense counsel responded that the suicide attempt occurred on August 22, 2023. Counsel argued that, if someone sought to evade prosecution, they would not "let everyone know where they are going." Counsel noted that defendant has lived in Illinois his entire life, has ties to the community, his mother lives in Crystal Lake, he has a brother in Hawthorn Woods, and another brother in Chicago. Counsel argued that defendant was not a flight risk and that conditions could be imposed to minimize any such risk, such as ordering him not to leave Illinois and to surrender his passport. Addressing defendant's plans to move to Florida, counsel argued that they were made in advance of knowing that a warrant had been issued.

¶ 11                              B. Circuit Court's Ruling

¶ 12 On October 31, 2023, the circuit court granted the State's petition, finding that the proof was evident or the presumption great that defendant committed the charged offenses. The court also found that the State met its burden to show that defendant posed a real and present threat of willful flight, noting the amount of money he allegedly stole would provide him the ability to:

"transition to a different physical environment, namely, an environment potentially out of the United States. It is not implausible to conclude that if [defendant] went to Florida, [he would] then have access to ports of exit that would allow [him] to leave the United States to be in an environment either in Central America, South America, or some other area that

- 4 -

would not have extradition proceedings allowing [his] return to the State of Illinois. Again, these are sizable amounts of assets." The court acknowledged that defendant had no history of avoiding court obligations, but the facts here, including the possibility of non-probationable Class X felony convictions, presented a possibility that he would flee Illinois. As to conditions that could mitigate the risk of willful flight, the court rejected electronic home monitoring or GPS options, finding that, given the charges against defendant and the amount of allegedly-stolen assets, such options would be insufficient or that "it is not improbable to conclude that [defendant] could find a way to defeat those tracking mechanisms and flee this jurisdiction." In its written order, the court noted that defendant had allegedly "obtained substantial assets from the alleged events," had taken affirmative steps to change communication information, such as obtaining a Florida phone number, and expressed his intent to move to Florida.

¶ 13 Defendant appealed, seeking release with appropriate conditions. In his notice of appeal, he checked a box indicating that the court erred in finding that the State met its burden of showing that no condition or combination thereof could mitigate his risk of willful flight. Defendant elaborated that he has strong and deep ties to the community and that his plans to move to Florida pre-dated his arrest. He also asserted that, as of the hearing date, he had no plans to flee the jurisdiction; the (unspecified) email presented was taken out of context; he had not taken steps to change his name; and he will seek employment under his given name.

¶ 14 On January 9, 2024, the Office of the State Appellate Defender filed a memorandum in support of defendant's appeal, and, on January 30, 2024, the State filed its responsive memorandum.

¶ 15                                    II. ANALYSIS

¶ 16    Defendant argues that the circuit court erred in finding that the State met its burden of showing that no conditions could mitigate his real and present risk of willful flight based on his alleged access to $1.9 million, particularly where the State presented no evidence that he still had the money he allegedly stole. He also contends that the court erred in merely hypothesizing that he might be able to use the money to defeat GPS monitoring. For the following reasons, we reject defendant's arguments.

¶ 17    We review under the manifest-weight-of-the-evidence standard the circuit court's factual findings regarding whether the State presented clear and convincing evidence that conditions of release would mitigate defendant's risk of willful flight to avoid prosecution. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is against the manifest weight of the evidence where it is unreasonable. *Id.* We review for an abuse of discretion the circuit court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion occurs only when the circuit court's decision is unreasonable. *Id.*

¶ 18    Pretrial release may be denied where a "person has a high likelihood of willful flight to avoid prosecution and is charged with *** [a] felony offense other than a Class 4 offense." 725 ILCS 5/110-6.1(a)(8)(B) (West 2022). The State "bear[s] the burden of proving by clear and convincing evidence that *** no condition or combination of conditions *** can mitigate *** the defendant's willful flight[.]" 725 ILCS 5/110-6.1(e)(3) (West 2022).

¶ 19    "Willful flight" means:

"intentional conduct with a purpose to thwart the judicial process to avoid prosecution. Isolated instances of nonappearance in court alone are not evidence of the risk of willful flight. Reoccurrence and patterns of intentional conduct to evade prosecution, along with any affirmative steps to communicate or remedy any such missed court date, may be

considered as factors in assessing future intent to evade prosecution." 725 ILCS 5/110-1(f) (West 2022).

¶ 20    As relevant here, the Act provides that, "[i]n determining which conditions of pretrial release, if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release," the circuit court shall take into account such matters as: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant, except that the court may consider the admissibility of any evidence sought to be excluded; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history, criminal history, and record concerning appearance at court proceedings and whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under any law; (4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release, if applicable, as required under paragraph (7.5) of Section 4 of the Rights of Crime Victims and Witnesses Act; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release, if applicable. 725 ILCS 5/110-5(a) (West 2022).

¶ 21    Defendant argues that, assuming he had a high likelihood of willful flight, the State did not prove by clear and convincing evidence that pretrial release conditions could not mitigate it. He notes that defense counsel argued that the court could have required defendant to remain in

McHenry County and that, even if he had no income, his mother lives in Crystal Lake and a brother lives in Hawthorn Woods. He also suggests that the court could require him to surrender his passport, submit to GPS location tracking, and obey a limited inclusion zone. Defendant contends that the circuit court erred in determining that any conditions would be insufficient to mitigate his likelihood of willful flight because he could somehow use the $1.9 million he stole to defeat any conditions and flee the country. This was erroneous, he argues, because the court assumed two things about which the State made no proffer at all: that he (1) still had the funds and (2) had some way to turn money into a mechanism to defeat GPS location monitoring and other pretrial release conditions. As to the first, defendant asserts that the State did not proffer that he had $1.9 million under his control. The charging instruments alleged that he had stolen the funds using checks to himself and his business, as well as unauthorized wire transfers and that he had a power of attorney for Merritt, who was in a memory care facility. Defendant contends that nowhere did the State proffer evidence that he had secreted the funds. The method it proffered that he used did not suggest, he asserts, sophistication in financial chicanery: rather, the State proffered that he abused his position of trust to cut himself and his business checks. Defendant also argues that there is no reason to believe that he still has the money, and he suggests he could have used it to prop up his high-volume business, which he testified had been generating losses for years. Further, he argues that, to the extent he still had the money, there was no reason to think that it was held in anything more exotic than a bank connected either to him or his business, which, the day after the detention hearing, the State was already moving to freeze.[2]

---

[2]On November 1, 2023, the State petitioned to freeze defendant's assets. 720 ILCS 5/17-56(h) (West 2022).

¶ 22    As to his assertion that the circuit court assumed that he had the mechanism to defeat GPS tracking, border controls, and flee the country, defendant asserts that he has no history of avoiding court orders, the crime he is charged with is not particularly sophisticated, and there was no evidence that suggested he has connections with criminals such as smugglers or document forgers. Buying illegal things, he suggests, is no simple matter, especially while under the State's scrutiny and with no prior experience. To the extent that his seeking to move to Florida and expressing an interest in changing his name suggested willful flight, defendant asserts, they did not demonstrate the sophistication the circuit court determined he might possess.

¶ 23    We reject defendant's arguments. The circuit court's determination that no conditions could mitigate his risk of flight was reasonable. We find unavailing his suggestion that the State was required to proffer that he still had the money. In the absence of evidence that it was used to support his business, this is implicit in the allegations that he stole it. We also find unavailing defendant's argument that, to the extent he still had the money, it would have been in a bank connected to him or his business and which the State had moved to freeze. Given his actions to move to Florida, it is reasonable to infer that he had the funds in the form of cash or a similar vehicle that could evade authorities. Indeed, his actions near the time of his arrest reflected that he intended to do so. The State proffered that, near the time of the bank investigation and his suicide attempt, defendant had sold his business and home, made statements that he intended to move to Florida in early November 2023, changed his phone number to a Florida number, and expressed interest in changing his name. The fact that defendant may have commenced preparation of these activities before he was arrested does not undermine a finding that he posed a flight risk and that no conditions could mitigate any risk of his willful flight. His actions focused on leaving Illinois, where he has spent his entire life and has family. Further, as the circuit court

reasonably determined, the funds defendant allegedly stole provided him the ability to access resources to evade legal proceedings in Illinois or even the United States. Finally, defendant's claim that he lacks financial sophistication is belied by the facts that he had a business that grossed over $2.5 million and allegedly stole $1.9 million from his aunt.

¶ 24    In sum, the circuit court did not err in finding that no conditions could mitigate defendant's real and present risk of willful flight.

¶ 25                               III. CONCLUSION

¶ 26    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 27    Affirmed.