2025 IL App (2d) 240752-U
No. 2-24-0752
Order filed March 17, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 24-CF-2254 |
| | ) | |
| RAUL PEREZ, | ) | Honorable |
| | ) | Mark Pheanis, and |
| | ) | John A. Barsanti, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Circuit court's detention order is affirmed, where defendant previously engaged in very similar behavior alleged here against the same domestic battery victim.

¶ 2   Defendant, Raul Perez, appeals from the circuit court's order granting the State's request to deny him pretrial release, pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See also Pub. Act 102-1104, § 70 (eff. Jan.

1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023).

¶ 3                                    I. BACKGROUND

¶ 4       On October 17, 2024, the State charged defendant with three counts of domestic battery—bodily harm—three prior convictions (720 ILCS 5/12-3.2(a)(1) (West 2022)) (class 3), three counts of domestic battery—contact—three prior convictions (*id.* § 12-3.2(a)(2)) (class 3), two counts of unlawful restraint (*id.* § 10-3) (class 4), domestic battery—bodily harm (*id.* § 12-3.2(a)(1)) (class A), domestic battery—physical contact (*id.* § 12-3.2(a)(2)) (class A), and two counts of interfering with reporting of domestic violence (*id.* § 12-3.5(a)) (class A).

¶ 5       On November 23, 2024, the State filed a verified petition to deny defendant pretrial release, alleging that he was charged with qualifying offenses, including domestic battery, and his pretrial release posed a real and present threat to the safety of any person or the community. Further, the State alleged as additional grounds warranting detention that defendant was on probation for a class 4 domestic battery (case No. 2022CF1515), where the victim in that case, Samantha Castro, was the same victim as in the present case. It noted that defendant had pleaded guilty on October 26, 2023, and was on probation for 24 months. There was also, as of September 6, 2024, an active order of protection against him (case No. 2024OP1377).

¶ 6       The State attached an addendum to its petition that included defendant's criminal case history: (1) No. 2022CF1515 (Kane County)—defendant was on probation for a class 4 domestic battery; (2) No. 2021CF1215 (Kane County)—defendant received probation for a class 4 domestic battery in which the victim was the same as in case No. 2024CF2254 (the present case), and defendant was unsatisfactorily discharged from probation; (3) No. 2020CM1757 (Kane County)—defendant received conditional discharge for a class A resisting a police officer; (4) No.

2019CM492 (Kane County)—defendant received conditional discharge for a class A resisting a police officer; (5) No. 2018CF189 (Kendall County)—defendant received probation for a class 4 cyberstalking; (6) No. 2018CM1291 (Kane County)—defendant received conditional discharge for a class A resisting a police officer; (7) No. 2018CM137 (Kendall County)—defendant convicted of class A violating an order of protection; (8) No. 2017CF1914 (Kane County)— defendant received probation for a class 2 aggravated battery to a peace officer; (9) No. 2017CM212 (Kane County)—defendant received conditional discharge for a class A battery, where the original charge was domestic battery and defendant pleaded to an amended charge; and (10) No. 2016CM2805 (Kane County)—defendant convicted of class A resisting a police officer.

¶ 7    On November 24, 2024, a hearing was held on the State's petition. The State proffered the police synopsis in this case, along with the order of protection in case No. 2024OP1377 and police synopses in case Nos. 2022CF1515, 2021CF1215, and 2018CM168.

¶ 8    The police synopsis in this case related as follows. On September 5, 2024, police took a report from Castro. Castro stated that she and defendant were in an on-and-off intimate relationship for about five years, resided at 255 North 4th Street in Aurora, and had three children together. Castro and defendant have a history of documented and undocumented domestic violence. On July 31, 2024, in the afternoon, defendant wanted to take Castro's truck to go out with his friends. After Castro did not give him permission, he became angry and accused her of creating problems. Castro told defendant she was going to leave, which caused defendant to become physically violent. As Castro attempted to leave by walking up the stairs, defendant grabbed her arm and pushed her against the wall near the kitchen sink. He then took her to the bathroom, where he pushed Castro into the bathtub and slapped and screamed at her. Defendant also tried to grab Castro by the neck to strangle her with both of his hands. She did not lose

consciousness and was able to breathe, but she felt pressure on her neck, experienced soreness, and had visible injuries. Defendant called Castro a "bitch" and told her that he did not want her to leave with the children. Castro pleaded with defendant to stop. They ended up in the bedroom, where defendant pushed Castro onto the dresser. After defendant heard his family arrive, he stopped battering Castro. Defendant took Castro's truck keys and cellphone, as he did not want her to call 911. For several days afterward, defendant did not allow Castro to go anywhere without him. Castro photographed her injuries, and the photos reflected that she had a dark purple bruise on her right shoulder/arm area, a dark red mark/laceration on the right side of her neck/under her jaw, light bruising/mark on her right collar bone, red spots/marks on her center right neck area, red lacerations/marks on the right cheek, red mark/laceration on her upper left breast, light purple/green bruise on her right forearm/wrist, and a red mark on her right forearm.

¶ 9 The police synopsis further related that, on the evening of August 28, 2024, Castro was getting her nails done, when defendant called repeatedly and texted her. He wanted Castro to rush home so that he could take her vehicle. When she returned home, defendant took her keys and left. Defendant later returned to the house while Castro was in the kitchen speaking to her mother on the phone. Defendant yelled at Castro, who told him she was on the phone with her mother. Defendant stated that he "did not give a fuck," took Castro's cellphone, and ended the call. Defendant then took Castro to the basement, where he sat her down on the couch, got in her face, and pushed her. He then dragged Castro to the ground and pulled her toward the bedroom, tearing her shirt. While being dragged, Castro hurt the back of her leg on a step, which caused bruising. Defendant grabbed Castro by the neck with both of his hands. Castro begged him to stop, afraid that he would kill her. Defendant pushed Castro three times, and she pulled away. Defendant mocked Castro by re-enacting her actions. As her mother arrived and entered the bedroom,

defendant slapped Castro. Defendant accused Castro of causing problems, and Castro begged her mother to take her. Her mother, Blanca Castro, stated that she was calling for help. Castro was unsure if her mother was calling 911, her father, or her brother. Defendant took away Blanca's cellphone, he continued to blame Castro for his "wrongdoings," and stated she did not help him with his problems. A couple of hours later, Castro decided to stay with defendant so as to "not make matters worse." However, a few days later, she made arrangements to flee the home with her children and obtained, on September 6, 2024, an order of protection (Kane County case No. 2024OP1377). Officer Jared Moore observed and photographed Castro's injuries. Blanca stated she was present during the second incident but did not want to provide a statement.

¶ 10 The police synopsis in case No. 2018CM168 related that, on January 23, 2018, defendant and a different victim, whom he had been dating for about 11 months, argued, and defendant took away the victim's phone in order to keep her at his house. He also grabbed the victim's shirt and dragged her down the stairs, causing her to fall. When she stood, defendant pushed her into his bedroom, where he told her to "shut up" and covered her mouth and nose with his hands. He released the victim but, shortly thereafter, slapped her with his knuckles, causing the victim to bleed from the mouth. He then pushed the victim out of the house until she fell to the ground.

¶ 11 The police synopsis in case No. 2021CF1215 related that, on July 4, 2021, defendant and Castro argued while en route to go shopping. Castro decided to turn around and drop off defendant at their home. At the house, defendant took Castro's keys and phone. When Castro exited the vehicle, defendant grabbed her arm to move her into the house, thereby, scratching her arms. The officer observed injuries on Castro, and defendant admitted to grabbing Castro's arm.

¶ 12 Finally, the police synopsis in case No. 2022CF1515 related that, on August 14, 2022, Castro was in her driveway, when defendant, her former boyfriend, arrived. Defendant was upset

over a phone issue and grabbed Castro by the arms and neck. Castro told police that she could not breathe. She pushed away defendant and stated that she was going to call the police. Defendant took her phone and threw it on the ground. Castro's father arrived and stated he was going to call the police. Defendant left in his truck. Castro had red abrasions on her left shoulder and redness on her neck. Police contacted defendant, who denied grabbing Castro and stated that Castro scratched his face.

¶ 13 Defendant proffered letters from two employers, stating that he worked, for parts of that year, as a subcontractor painter.

¶ 14 The circuit court granted the State's petition, finding that the proof was evident and presumption great that defendant committed a detainable offense, based on the exhibits tendered, including the order of protection and police synopses. The court also found that defendant posed a real and present threat to any person or the community, based on the number of times Castro had been his victim, the nature of the incidents, that there was a continuing and mindful intent to control her, and that defendant threatened strangulation. It also found that no conditions or combination thereof could mitigate the threat defendant posed. The court issued no written findings as to the bases for its determination that no condition or combination thereof could mitigate the threat defendant posed. However, in its oral ruling, the court noted the number of times Castro was defendant's victim, the nature of the incidents, and the fact that the circumstances did not reflect that defendant had lost his temper and acted out. Rather,

"there is a controlling and mindful attempt to control and influence the behavior of Miss Castro that's set forth here. There's game playing. There's pretend strangulation. There are attempts of: I'm going to strangle you, I can put my hands around your throat, I'm not pushing down, but this could happen. *** [T]hat kind of behavior dictates to the

Court something that I think [Castro] needs to be protected against, and the only thing that's going to protect her is detaining [defendant] during the pendency of this suit[.]"

¶ 15    On December 2, 2024, defendant filed a motion for relief and, on December 4, 2024, an amended motion for relief. In the amended motion, defendant asserted that the circuit court erred in granting the State's petition to detain. Specifically, he argued that the State had failed to meet its burden to show that the proof was evident and presumption great that defendant committed the detainable offenses charged, where, without more than probable cause established by its exhibits, the court could not have found clear and convincing evidence that defendant committed the offenses. Next, he argued that the State did not meet its burden to show that defendant posed a real and present threat to any person or the community, where he was served with an order of protection in late October and, afterward, refrained from having any contact with Castro. Thus, his compliance with the rules and conditions set out in the order served as direct evidence that he did not pose a threat to Castro. Further, defendant argued that the timeline of events did not establish that he was a *present* threat to Castro, where two alleged incidents of domestic battery occurred in July and August 2024, but no charges were filed until September and defendant was not arrested until November. Also, there were no new allegations of domestic battery or violations of the order of protection since the September 5, 2024, report. Finally, defendant argued that the State did not meet its burden to show that no conditions or combination thereof could mitigate the real and present threat he posed, where his compliance with the order of protection issued on September 6, 2024, showed that he can and will abide by any conditions imposed by the court.

¶ 16    On December 5, 2024, a hearing was held on defendant's motion for relief. Defense counsel noted that defendant lives with his parents in Aurora and has three children that he financially supports. He is self-employed as a house painter and works as a subcontractor. Counsel

also asked the court to take judicial notice of the fact that Castro's home is only 0.3 miles from the Aurora police department. Counsel argued that the timeline did not reflect that defendant was a present danger to Castro, as her allegations related to domestic batteries in July and August of 2024. Charges were filed in October, a warrant was issued on October 17, and defendant was arrested on November 22. Counsel noted, as to mitigating conditions, that the circuit court had not made written findings on the issue and, thus, "unless the State can present a transcript that shows [the court] made those finding," it should be presumed that defendant should be released. (No transcript of the hearing on the State's petition to detain was available during the hearing on defendant's motion for relief.) Nevertheless, counsel noted that defendant was willing to submit to electronic home monitoring (EHM), GPS, and random alcohol testing. Counsel also noted that defendant had completed probation at the time of the alleged offenses.

¶ 17 The circuit court denied defendant's motion. It found that the proof was evident and presumption great that defendant committed detainable offenses, noting the synopsis and physical evidence of injuries to Castro. Also, there was eyewitness testimony, and defendant's criminal history involving Castro, along with other victims. The court also found that defendant posed a real and present threat to the victim, as he had three prior convictions for domestic battery. The court found that defendant was "still committing these offenses. He was even off probation and coming back and committing these offenses again. It appears to me that these offenses could very well continue going forward." (Defense counsel had asserted that defendant had completed probation at the time of the offenses.) EHM would not mitigate the threat defendant posed, the court found, because he was permitted to leave his home two days per week.

¶ 18 On December 9, 2024, defendant filed a notice of appeal. On January 22, 2025, the Office of the State Appellate Defender filed, pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr.

15, 2024), a notice in lieu of a memorandum. On January 27, 2025, the State filed a memorandum in opposition to defendant's appeal.

¶ 19                                    II. ANALYSIS

¶ 20     Defendant argues that the State did not meet its burden to show that: (1) the proof is evident and presumption great that he committed detainable offenses, (2) he posed a real and present threat to the safety of any person or the community, and (3) that no conditions or combination thereof can be imposed that would mitigate the real and present threat to the safety of any person or the community based on the specific articulable facts of the case. For the following reasons, we reject his arguments.

¶ 21     Where, such as here, the detention hearing was conducted solely by way of proffer and evidence otherwise documentary in nature and where no live testimony was presented, we review *de novo* the circuit court's determination. *People v. Morgan*, 2025 IL 130626, ¶¶ 51, 54.

¶ 22     Because OSAD filed a notice in lieu of memorandum, we consider only the arguments asserted in defendant's motion for relief. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("The motion for relief will serve as the argument of the appellant on appeal."). Here, however, during the hearing on defendant's motion for relief, defense counsel additionally argued that the circuit court had not made written findings that no mitigating conditions could be imposed. Section 110-6.1(h)(1) of the Code (720 ILCS 5/110-6.1(h)(1) (West 2022)) requires a circuit court to enter a written detention order when it orders a defendant detained. This argument was not raised in defendant's motion and, therefore, is waived. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived."). Waiver aside, we note that courts have held that specific *oral* findings satisfy the statutory requirement. See, *e.g.*, *People v. Andino-*

*Acosta*, 2024 IL App (2d) 230463, ¶¶ 19-22 (holding that the circuit court's oral ruling was "explicit and individualized" and "sufficient to apprise the defendant of the reasons for its ruling and to accommodate review under the Act"); see also *People v. Gooden*, 2024 IL App (4th) 231523, ¶ 32 (holding that, where a written order is lacking or deficient, a reviewing court "should focus primarily on the [circuit] court's oral ruling and explanations" rather than the written order, "which is entered after the hearing and is supposed to merely summarize the court's reasoning for ordering detention"). When ruling on the State's petition, the circuit court made specific oral findings that no conditions of release could mitigate the threat defendant posed.

¶ 23    Under the amended Code, every person charged with an offense is presumed eligible for pretrial release. 725 ILCS 5/110-2(a), 6.1(e) (West 2022). The State must file a verified petition requesting the denial of pretrial release, and the circuit court shall hold a hearing on the petition. *Id.* § 110-6.1(a). When seeking denial of pretrial release, the State bears the burden of proving by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3)

> "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, for offenses listed in paragraphs (1) through (7) of subsection (a), or (ii) the defendant's willful flight for offenses listed in paragraph (8) of subsection (a)." *Id.* § 110-6.1(e)(1)-(3).

Section 110-10(b) provides a list of pretrial conditions that may be imposed. *Id.* § 110-10(b). Conditions that may be imposed include restrictions on out-of-state travel, reporting requirements, restraining orders as to certain people or places, home supervision with or without electronic

monitoring, and "other reasonable conditions" as the least restrictive means to ensure compliance with the law. *Id.*

¶ 24     To set appropriate conditions of pretrial release, the circuit court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a).  In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive.  See *id.*

¶ 25     Defendant argues first that the State did not meet its burden to show that the proof was evident and presumption great that he committed detainable offenses.  He asserts that the circuit court's reliance on the police synopsis, which was based upon the lower probable cause standard, and the State's argument, were insufficient to satisfy the State's burden.  He also notes that he is presumed innocent of all the charges.

¶ 26     We reject defendant's argument and agree with the circuit court that the State met its burden.  At a pretrial detention hearing, the State is explicitly permitted to present evidence "by way of proffer based upon reliable information."  725 ILCS 5/110-6.1(f)(2) (West 2022); see *id.* § 110-6.1(f)(5) (exempting detention hearings from the rules of evidence).  A police synopsis alone is sufficient to sustain the State's burden.  *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24.  The synopsis here contained ample evidence to show that the proof was evident and presumption great

that defendant committed the charged detainable offenses. The synopsis related, in detail, events in July and August of 2024, wherein defendant, after being told by Castro that she was going to leave him or that she was on the phone with her mother, became violent and grabbed, pushed, slapped, screamed, dragged, and/or attempted to strangle Castro, causing her to sustain injuries. Castro photographed her injuries after the first incident. Further, addressing the second incident, the police officer who took Castro's statements noted that he observed and photographed Castro's injuries and that Blanca told him that she was present during the second incident (although she declined to give a statement). The foregoing was sufficient evidence from which a finding could be made that defendant committed the charged detainable offenses.

¶ 27    Next, defendant argues that the State did not meet its burden to show that he posed a real and present threat to the safety of any person or the community. Specifically, defendant contends that he was served with an order of protection in late October 2024 and, afterward, refrained from having any contact with Castro. Thus, his compliance with the rules and conditions in the order were direct evidence that he does not pose a real and present threat to Castro. Further, defendant notes the timeline of events in this case, arguing that he does not pose a *present* threat to Castro, because the alleged events occurred in July and August 2024, the police took a report in September, charges were filed in October, and defendant was arrested in November. Finally, defendant notes that no new allegations of domestic battery or violations of the order of protection have been made since the September 2024 report.

¶ 28    We reject defendant's argument. As the circuit court found when ruling on the State's petition, defendant had a continuing intent to control Castro, based on the number of times she had been his victim, the nature of the incidents, and the fact that he attempted to strangle her. We agree with the circuit court that this constituted sufficient evidence to support a finding of dangerousness.

Further, defendant's criminal history provided a basis from which to infer that defendant is a present threat to Castro, where he *twice* previously engaged in behavior—domestic battery—directed against her under circumstances very similar to the behavior alleged in the two incidents in this case, specifically, attempting to strangle her and preventing her from leaving their residence. See 725 ILCS 5/110-6.1(g)(2)(A) (West 2022) (a court may, in determining dangerousness, consider evidence of a prior criminal history of violent, abusive, or assaultive behavior).

¶ 29    Finally, defendant argues that the State failed to meet its burden to show that no condition or combination thereof could be imposed that would mitigate the threat he posed. He asserts that his compliance with the order of protection issued on September 6, 2024, constitutes "substantial proof" that he can and will abide by any conditions imposed by the court.

¶ 30    We reject defendant's final argument and agree with the circuit court that no conditions or combination thereof could mitigate the threat defendant poses. Defendant's pattern of violence against Castro and at least one other female victim supports a finding that no conditions can mitigate the threat he poses. His criminal history also reflects that he previously was unsatisfactorily discharged from probation for a class 4 domestic battery in which Castro was also the victim. This shows that he would likely not abide by court orders, including EHM, which allows for two days of movement in the community. See 730 ILCS 5/5-8A-4(A-1) (West 2022) ("[a]t a minimum, any person ordered to pretrial home confinement with or without electronic monitoring must be provided with movement spread out over no fewer than two days per week, to participate in basic activities such as those listed in paragraph (A)").

¶ 31                                    III. CONCLUSION

¶ 32    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 33    Affirmed.