2026 IL App (2d) 250492-U
No. 2-25-0492
Order filed January 29, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v. CHUL Y. PAIK, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.
Honorable Michael G. Nerheim, Judge, Presiding.
Nos. 25-CF-2218 & 25-CF-2245

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in granting the State's petition to deny defendant pretrial release based on his risk of willful flight.

¶ 2    Defendant, Chul Paik, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2024)).  On appeal, defendant argues that the trial court erred in finding that he posed a risk of willful flight and that there were no conditions that could mitigate that risk.  We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On September 29, 2025, defendant was charged in Lake County case No. 25-CF-2218 with two counts of theft by deception (720 ILCS 5/16-1(a)(2)(A) (West 2022)), a Class 2 felony.  The charges alleged that, on September 8, 2025, defendant knowingly exerted unauthorized control

over $17,000 cash belonging to 80-year-old Erika Eddy. On September 30, 2025, defendant was granted pretrial release subject to the conditions that he have no contact with Eddy; anyone at her residential facility; any person over 65 years old who was not a family member; or with his co-defendant, Danny Piao. A public safety assessment report classified these as "Level 1" pretrial conditions.

¶ 5       On October 1, 2025, defendant was charged in Lake County case No. 25-CF-2245 with two counts of theft by deception (*id.*), alleging that, on September 24, 2025, defendant knowingly exerted unauthorized control over $30,000 cash belonging to Peter Stonebraker, who was over 60 years old. A public safety assessment report indicated that defendant was previously placed on Level 1 pretrial conditions and thus recommended Level 2 pretrial conditions, which included court reminder calls before each court date and monthly telephone check-ins by defendant.

¶ 6       On that same date, the State filed a petition to detain defendant in the latter case. The State asserted that there was sufficient evidence that defendant committed the charged offenses, that he posed a high likelihood of willful flight to avoid prosecution, and that no conditions of release could mitigate his flight risk.

¶ 7       In the petition, the State proffered the following facts. On September 24, 2025, an 83-year-old Lake Forest senior was victimized in a sophisticated refund scam. While using his computer, the victim was advised that he had an improper antivirus software and was given a phone number to call to have it removed. When the victim called the number, he spoke with an alleged McAfee representative, who stated that the software would be cancelled and that a $450 refund would be issued. The victim was then told that he had been accidentally issued a $48,000 refund. He was advised to send $30,000 cash through a Bitcoin machine at a nearby gas station to repay the accidental refund. The victim went to his bank, withdrew $25,000, and proceeded to the gas

station. When he was unable to operate that Bitcoin machine, he called the representative, who stated that a courier would be sent to the victim's senior living facility to collect the cash. Later that day, the courier arrived at the victim's residence and collected the cash. The victim described the courier as a white or Asian male wearing a white bucket hat, white shirt, and yellow pants.

¶ 8 Two days later, the representative contacted the victim again and directed him to obtain $5,000 worth of Lululemon and Apple gift cards. When the victim attempted to purchase the gift cards, the retailer advised him that he was likely being scammed and instructed him to call the police. Upon receiving the report, officer's reviewed CCTV footage from the victim's residential facility, which showed a courier matching the victim's description arriving in a black sedan.

¶ 9 Subsequent investigation linked defendant and his co-defendant, Piao, to this offense and to a nearly identical scam at another Illinois senior living facility (case No. 25-CF-2218). When interviewed, both defendants admitted to being at the Lake Forest residence. Defendant admitted that he drove Piao to the location, and Piao admitted that he picked up the cash. The interviews further revealed that the scams were coordinated through a Telegram app group chat labeled in Chinese characters and involving a large number of participants. Piao admitted that he and defendant had conducted numerous money pick-ups, nearly every day for the preceding 10 days, typically collecting approximately $15,000 in cash per transaction. They would deliver the cash to a man in Wisconsin and receive $1,000 per transaction in return. They had conducted multiple runs in Indiana, Wisconsin, and Illinois, and then flew back to the East Coast. Defendant resided in New Jersey and Piao resided in New York. This was the second time they had traveled to the Midwest to collect funds. Piao received instructions through the Telegram app.

¶ 10 The State's investigation further revealed that the Telegram app utilized end-to-end encryption, allowing users to communicate in a manner that could not be accessed by law

enforcement, even pursuant to a valid search warrant or subpoena. This was defendant's second visit to Illinois and the State believed there were numerous more victims in Lake and Cook Counties, and noted that charges would be screened in the coming days. The State was also in possession of two phones belonging to defendant and hoped to uncover further evidence about the multi-state criminal enterprise.

¶ 11    The State asserted that defendant was an out-of-state resident with no community ties, traveled to the Midwest solely to commit the charged offenses, and acknowledged repeated involvement in an organized, multi-state criminal enterprise targeting vulnerable elderly victims. The State argued that defendant should be detained because his circumstances presented a high likelihood of willful flight to avoid prosecution. The State further argued that no conditions of release could mitigate defendant's flight risk.

¶ 12    The trial court held a hearing on the State's petition the next day. The State presented the same proffer and argument set forth in its petition. Defendant argued that he was 44 years old with no prior criminal history. He owned a home in New Jersey, had been married for 15 years, and had two children in elementary school. His mother, aunts, uncles, and cousins all resided in New Jersey. Although he was born in Korea, defendant had lived in the United States for 25 years and had been a citizen for 10 years. He had not traveled to Korea in 15 years, and police had confiscated his passport. Defendant further asserted that he acted only as a driver, had no contact with the victims, and, unlike Piao, never admitted knowledge of the scheme. He stated that he cooperated with police by turning over his phone and providing the password. Defendant also asserted that he was anxious to return to court to address the charges.

¶ 13    Following argument, the trial court granted the State's petition to detain defendant. The trial court found that the State had presented clear and convincing evidence that defendant

committed the charged offenses. The trial court noted that the charges involved multiple victims and at least two Illinois municipalities. The trial court also referenced Piao's statements that defendant had conducted daily deliveries in Wisconsin over a 10-day period and received approximately $10,000 in cash. The trial court further observed that the alleged offenses involved a sophisticated, multi-state scheme carried out by multiple individuals using end-to-end encryption, which significantly impeded detection by law enforcement. The trial court found that defendant had no ties to the community and traveled from the East Coast to commit crimes in multiple states. Based on these facts, the trial court concluded that defendant posed a high likelihood of willful flight. As to conditions of release, the trial court found that no conditions could mitigate defendant's flight risk in light of the serious nature of the offenses, the number of victims and defendants involved, the complexity of the scheme, and defendant's lack of community ties. The trial court entered a written detention order the same day.

¶ 14   On October 23, 2025, defendant filed a motion for relief. On October 28, 2025, following a hearing, the trial court denied that motion. Defendant thereafter filed a timely notice of appeal.

¶ 15                                      II. ANALYSIS

¶ 16   On appeal, defendant stands on his motion for relief, which thus serves as his argument on appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). There, he argued that he did not pose a high likelihood of willful flight and that conditions of release could mitigate any such risk. He did not argue that the offense he committed was not a proper basis for detention based on a risk of willful flight; therefore, any such argument is waived. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024); *People v. Perez*, 2025 IL App (2d) 240752-U, ¶ 22.

¶ 17   All defendants are presumed eligible for pretrial release, and the State bears the burden of proving otherwise by clear and convincing evidence. 725 ILCS 5/110-6.1(e) (West 2024).

Relevant to this appeal, a court may deny pretrial release if the defendant "has a high likelihood of willful flight to avoid prosecution and is charged with *** [a] felony offense other than a Class 4 offense." *Id.* § 110-6.1(a)(8)(B). The Code defines "willful" flight as:

"intentional conduct with a purpose to thwart the judicial process to avoid prosecution. Isolated instances of nonappearance in court alone are not evidence of the risk of willful flight. Reoccurrence and patterns of intentional conduct to evade prosecution, along with any affirmative steps to communicate or remedy any such missed court date, may be considered as factors in assessing future intent to evade prosecution." *Id.* § 110-1(f).

¶ 18 To deny a defendant pretrial release based on willful flight, the trial court must find that the State proved the following by clear and convincing evidence: (1) the proof is evident or the presumption great that the defendant has committed a detainable offense as set forth in section 110-6.1(a)(8); (2) the defendant poses a high likelihood of willful flight to avoid prosecution; and (3) no condition or combination of conditions can mitigate the risk of willful flight. *Id.* § 110-6.1(e)(1), (3); see also *People v. Slaten*, 2024 IL App (2d) 240015-U, ¶ 21 (the trial court must first make a threshold determination that the defendant poses a high likelihood of willful flight and then determine whether any conditions could mitigate that risk). In its detention order, the trial court must "make a written finding summarizing [its] reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not *** prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(h)(1) (West 2024). A written order in conjunction with oral findings is sufficient to satisfy this requirement. *People v. Turner*, 2024 IL App (5th) 230961-U, ¶ 24 (citing *In re Madison H.*, 215 Ill. 2d 364, 372-75 (2005)).

¶ 19 As is relevant here, the Code provides that, "[i]n determining which conditions of pretrial release, if any, will reasonably ensure the appearance of a defendant as required or the safety of

any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release," the circuit court shall consider factors including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant, including character, family ties, employment, financial resources, length of residence in the community, community ties, and criminal history; and (4) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. See 725 ILCS 5/110-5(a) (West 2024).

¶ 20    Where the parties to a pretrial detention hearing proceed solely by proffer, our review is *de novo*. *People v. Morgan*, 2020 IL 130626, ¶ 51; *People v. French*, 2025 IL App (2d) 250035-U, ¶¶ 22-27. Under a *de novo* standard of review, the reviewing court performs the same analysis as the trial court and determines whether the detention decision was correct as a matter of law. *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 21    In addressing whether defendant posed a high likelihood of willful flight, the parties and the trial court relied on *People v. Boncosky*, 2024 IL App (2d) 230496-U. In that case, the defendant was charged with various Class X and Class 1 felonies for stealing $1.9 million from his memory-impaired aunt over a four-year period. *Id.* ¶ 4. The State filed a petition to detain the defendant based on his flight risk. *Id.* ¶ 9. At the detention hearing, the State emphasized that the victim was 74 years old and that the defendant occupied a position of trust. The State further asserted that the defendant had taken several steps indicative of flight: he had recently sold his business and home, stated that he intended to move to Florida, changed his phone number to a Florida number, and expressed interest in changing his name. *Id.* The defendant responded that he had lived in Illinois his entire life, maintained community ties, and had family in Crystal Lake, Chicago, and Hawthorn Woods. He argued that he was not a flight risk and that conditions could

be imposed to minimize any such risk, such as ordering him to surrender his passport and remain in Illinois. *Id.* ¶ 10.

¶ 22 The trial court granted the State's petition to detain, noting that the substantial amount of money allegedly stolen provided the defendant with the ability to travel to Florida and potentially leave the United States through various ports of exit. The trial court acknowledged that the defendant had no criminal history but found that the seriousness of the charges created both the possibility and motivation to flee Illinois. *Id.* ¶ 12. The trial court further found that, given the amount of stolen money, it was probable that the defendant could defeat tracking mechanisms and flee the jurisdiction. In its written order, the trial court additionally noted that the defendant had expressed an intent to move to Florida and had obtained a Florida phone number. *Id.*

¶ 23 On appeal, this court affirmed the defendant's detention. *Id.* ¶ 24. We held that it was reasonable to conclude that no conditions could mitigate the defendant's flight risk. *Id.* ¶ 23. Although the defendant argued that the State could freeze his assets, we concluded that, in light of his efforts to relocate to Florida, it was reasonable to infer that he possessed stolen assets in cash or a similar form capable of evading authorities. *Id.* We noted that the defendant "made statements that he intended to move to Florida \*\*\*, changed his phone number to a Florida number, and expressed interest in changing his name." We agreed with the trial court that the defendant's efforts to move to Florida, combined with access to substantial stolen assets, provided him with the resources to evade legal proceedings in Illinois. *Id.*

¶ 24 In the present case, defendant's arguments in his motion for relief were based entirely on distinguishing *Boncosky*. He argued that, unlike the defendant in *Boncosky*, he had no criminal history; was charged with Class 2 felonies; was married; made no plans to leave his family or

relocate from New Jersey; had stolen a significantly smaller amount of money; was not related to the victim; and had cooperated with police.

¶ 25    In its memorandum in opposition to this appeal, the State argues that defendant poses a high likelihood of willful flight because he has no ties to the community, regularly traveled to commit thefts, had come to Illinois a second time to do so, and engaged in crimes involving substantial sums of money, multiple elderly victims, and a sophisticated scheme utilizing encryption. The State further noted that the trial court had considered *Boncosky* and nonetheless found defendant to be a flight risk because he lacked ties to both the community and Illinois. The State argues that no conditions of release could mitigate defendant's flight risk given his lack of ties to Illinois and his frequent travel back to New Jersey.

¶ 26    We agree that the facts support a determination that defendant poses a risk of willful flight. Defendant lives in New Jersey and has no ties to either the community or Illinois. He received approximately $1000 per day for the ten days preceding his arrest, and therefore has sufficient cash to evade the Illinois court system. Further, defendant participated in a sophisticated, multi-state scheme involving multiple individuals to defraud elderly victims and used an end-to-end encrypted app that hindered law enforcement's ability to detect or monitor criminal activity. Statements made by Piao to police indicated that he and defendant had committed multiple crimes of this type in Illinois, Wisconsin, and Indiana, suggesting that defendant may be motivated to evade additional charges. Although defendant claimed in his motion for relief that he had cooperated with police by turning himself in and providing access codes to his cell phones, the record indicates that he was arrested and that only one of the access codes he provided actually worked.

¶ 27    Defendant's attempt to distinguish *Boncosky* is unpersuasive. In that case, there was a single victim and the offense lacked sophistication. By contrast, the present case involved multiple

victims and, based on Piao's admissions, potentially many more. Defendant participated in a sophisticated fraud scheme that used an end-to-end encrypted app to evade law enforcement. Although the total amount stolen here was less than in *Boncosky*, it is still a sufficient amount to facilitate flight. Moreover, in *Boncosky*, the defendant had community ties but was still considered a flight risk because he had access to substantial stolen funds. The risk here is even greater, as the present defendant also acquired significant funds but lacks any ties to the community. Finally, although defendant notes that, unlike *Boncosky*, he has no criminal record, he was charged in two separate cases with the same offenses, and Piao's statements indicate there are other victims.

¶ 28    Finally, we find no error in the trial court's determination that no conditions of release could mitigate defendant's risk of willful flight. Again, defendant participated in a sophisticated fraud scheme with multiple victims, lived out of state with no ties to Illinois, and had recently obtained $10,000 for his participation, funds which could be readily used to evade legal proceedings in Illinois.

¶ 29                                III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 31    Affirmed.