2025 IL App (2d) 250035-U
No. 2-25-0035
Order filed August 4, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 24-CF-2637 |
| PIERRE J. FRENCH, | ) ) | Honorable Bianca Camargo |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justice Hutchinson concurred in the judgment.
Justice McLaren specially concurred.

**ORDER**

¶ 1   *Held*: The circuit court's denial of defendant's pretrial release is affirmed, where (1) the proof is evident or presumption great that defendant committed first degree murder; (2) defendant poses a real and present threat to the victim's boyfriend and the community; and (3) no conditions could mitigate that threat.

¶ 1   Defendant, Pierre J. French, appeals from the circuit court's order granting the State's petition to deny pretrial release, pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See also Pub. Act 102-1104, § 70 2025

IL App (2d) 250030-U (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023). For the following reasons, we affirm.

¶ 2                                    I.  BACKGROUND

¶ 3       On December 7, 2024, defendant was charged with two counts of first degree murder. 720 ILCS 5/9-1(a)(1), (a)(2) (West 2022). The charges arose after defendant and his wife, DreAnna Booker, were in a dispute and he stabbed her.

¶ 4       Thereafter, on December 8, 2024 the State petitioned to deny defendant pretrial release. The petition alleged that defendant should be detained because he was charged with a felony that involved the infliction of great bodily harm and his release posed a threat to the safety of any person or the community. 725 ILCS 5/110-6.1(a)(1.5) (West 2022). That same day, the court heard the State's petition. The State introduced into evidence the police synopsis, police reports, and the emergency order and verified petition for an order of protection in Kane County case No. 24-OP-1124. According to the synopsis, Elgin police responded to the 400 block of McClure Avenue after reports that a blue GMC sports utility vehicle (SUV) rammed into a parked vehicle belonging to Sam Lynch and drove away. Police located and attempted to stop defendant, who was driving the SUV, but he refused to pull over. Attempts to stop the vehicle were eventually terminated.

¶ 5       Officers then responded to Booker's address, as she was the registered owner of the SUV. Contemporaneously, dispatch received a call from defendant, admitting that he stabbed Booker earlier at his residence. Officers then drove to defendant's residence and forced entry. They discovered Booker deceased in the kitchen. She had sustained several stab wounds, many of which were in her abdominal area and neck. Her injuries were so severe, part of her intestines were visible

on the kitchen floor. Thereafter, defendant was pulled over and arrested. In the vehicle, officers observed a butcher knife that appeared to be covered in blood.

¶ 6    Defendant was taken to the Elgin police department, where he was Mirandized and provided a recorded statement. Defendant advised that he and Booker were married but separated, and he was aware that Booker was in a relationship with another man. After defendant got off work, he went to Booker's residence, and she gave him a ride home. During the ride, they argued about their relationship. After arriving at defendant's residence, the argument continued, and defendant displayed a kitchen knife to "scare" Booker. Thereafter, he "snapped" and started stabbing Booker. He then left his residence in Booker's SUV and drove to her boyfriend's residence to stab him too. Defendant did not locate Booker's boyfriend but did recognize his vehicle, with which defendant collided before driving away.

¶ 7    Police were also provided a statement from Booker's brother who reported receiving a call from defendant indicating that he was sorry, was in a high-speed chase, and tried to kill Booker and her boyfriend.

¶ 8    Additionally, the emergency order and verified petition for order of protection provided that defendant forced Booker to have sexual intercourse with him after grabbing her private area "really hard." Defendant also threatened to beat up Booker's "friend" and was reportedly asking friends to purchase a firearm for him. Booker also alleged in the petition that she called police on multiple occasions because of defendant's temper and aggressive displays in front of their six shared children.

¶ 9    In argument, defense counsel stated that defendant was gainfully employed, resided in Kane County, and had no other pending criminal cases. Defendant also has six children that he supports financially. Counsel argued that the State failed to meet its burden by refusing to produce

defendant's interview and 911 recording and improperly relying on hearsay and police summaries. In response, the State argued that there was more than clear and convincing evidence that the proof was evident and presumption great that defendant killed Booker. Further, the police synopsis of the incident was sufficient to meet its burden, and the court was allowed to consider hearsay evidence. At the conclusion of the hearing, the court found that there was clear and convincing evidence that defendant committed first degree murder, based on his statements recounted in the police synopsis and reports.

¶ 10    Thereafter, the State asserted that defendant posed a real and present threat to Lynch and the community because he demonstrated extreme violence. First, based on the petition and order of protection, defendant threatened to beat up Booker's "friend," presumably Lynch; had a history of violence against Booker; and was attempting to obtain a firearm. Then, defendant drove to Lynch's house intending to stab him, and, after failing to locate Lynch, defendant collided the SUV with what he believed to be Lynch's parked car. Also, the State opined that, if released from custody, it would be reasonable to infer that defendant would continue to go after Lynch.

¶ 11    The State then argued that there were no conditions that would mitigate the risk defendant posed to Lynch or the community. It noted that it would be impossible to monitor the defendant's possession of weapons, especially easily accessible weapons like knives, based only on his location. Also, defendant's ability to leave the house two days a week and still physically access Lynch's residence put Lynch at risk, as police could not instantaneously know if defendant violated the terms of electronic home monitoring (EHM). Additionally, as defendant admitted that he recognized Lynch's car, he may recognize Lynch in public, harm him, and never trigger an EHM alarm.

¶ 12 Defense counsel responded, arguing that there was no clear and convincing proof that Booker had a boyfriend, that the boyfriend was Lynch, or that defendant threatened Lynch. Moreover, defendant was not a threat to the community because there was "an argument where emotions are high and it's specific to one setting ***" —defendant's threat was not generalizable to the community. Additionally, there was no evidence supporting the claim that defendant was trying to purchase a firearm at the time of this offense or was precluded from owning a firearm, as the emergency order of protection lapsed several months prior to the incident here.

¶ 13 Regarding conditions of release, defense counsel stressed that mitigation, not elimination, of risk was the key. Counsel requested EHM, as defendant did not have a criminal history, he maintained consistent employment, and had no history of violating court orders. Further, defendant's public safety assessment showed a low likelihood of reoffending or flight from prosecution.

¶ 14 The State asserted that defendant was also a threat to the community because he reacted disproportionately to Booker after an argument, where he "gutted the mother of his children." And, even if not a threat to the community, defendant was certainly a threat to Booker's boyfriend, which evidence suggested was Lynch. Further, he was not a good candidate for EHM due to the facts of this case, especially because defendant had stated his intent to locate and stab Lynch and had a knife with him.

¶ 15 Ultimately, the circuit court agreed that the State proved dangerousness towards Lynch by clear and convincing evidence. The court disregarded defense counsel's arguments that there was no evidence that Booker was in a relationship with Lynch. It found compelling that defendant believed that Booker was in a relationship with Lynch, or at least a man who drove the same car as Lynch and resided at the same location. The court also found it compelling that defendant drove

with a butcher knife and threatened to stab the owner of the vehicle whose car he hit. Regarding conditions, the court also concluded that the State proved that no combination of conditions would mitigate defendant's threat to Lynch, as defendant was prepared to cause harm to another or their property, where Lynch was not "readily visible to [defendant]." In sum, the court granted the State's petition to detain defendant.

¶ 16    On December 9, 2024, defendant moved for relief, arguing that the circuit court erred in finding, and the State failed to prove, that (1) the proof was evident or presumption great that he committed the charged offenses; (2) he was a real and present threat to the community and Lynch; and (3) no combination of conditions would mitigate the real and present threat he posed to the community and Lynch. On January 22, 2025, the court heard argument, reviewed the police synopsis and exhibits, and denied defendant's motion for relief. The court found, based on the police synopsis and reports, that clear and convincing evidence existed that showed the proof was evident or presumption great that defendant committed first degree murder. Regarding dangerousness, the court found that defendant made statements that showed he posed a threat to the community and Lynch. Defendant's "successful completion" of murdering Booker did not mean, the court found, that his threat level posed to the remainder of the community and Lynch was neutralized. Finally, the court found no combination of conditions would mitigate defendant's risk, as there was a restraining order between defendant and Booker that persisted throughout their divorce proceedings, which prohibited defendant from harassing or making abusive or physical contact with Booker, and defendant violated that order. Overall, the court rejected defendant's arguments and denied the motion for relief.

¶ 17 On January 23, 2025, defense counsel filed a notice of appeal, challenging the denial of defendant's pretrial release. The Office of the State Appellate Defender filed a notice in lieu of a memorandum on March 13, 2025, and the State responded.

¶ 18                                    II. ANALYSIS

¶ 19                                    A. Timeliness

¶ 20 Defendant filed a notice of appeal on January 23, 2025. Under Illinois Supreme Court Rule 604(h)(8), our disposition was to be filed 100 days from that date, or May 5, 2025. Ill. S. Ct. R. 604(h)(8) (eff. Apr. 15, 2024). However, this case was reassigned to a new authoring justice on July 9, 2025. Accordingly, this court has good cause in filing our disposition beyond the 100 days after the filing of the notice of appeal.

¶ 21                                 B. Standard of Review

¶ 22 Appeals from the denial of a defendant's pretrial release are reviewed under either the manifest-weight-of-the-evidence or *de novo* standards. *People v. Morgan*, 2025 IL 130626, ¶ 54. According to *Morgan*, the question of which standard applies is determined by the following:

> "(1) when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence and (2) when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id.*

Here, because the parties proceeded solely by proffer, our standard is *de novo*.

¶ 23    The special concurrence advocates utilizing a manifest-weight-of-the-evidence standard. Contrary to the rationale outlined in the special concurrence, there are several reasons to adhere to the *de novo* standard described in *Morgan*. First, we must adhere to the doctrine of *stare decisis*. Illinois has but one unitary appellate court, made up of five districts. *Strategic Energy, LLC v. Illinois Commerce Comm'n*, 369 Ill. App. 3d 238, 243-44 (2006). The doctrine of *stare decisis* requires the districts, as one appellate court, to follow the decisions of the supreme court. *O'Casek v. Children's Home and Aid Society of Illinois*, 229 Ill. 2d 421, 439-40 (2008). This doctrine ensures that the law will not merely change erratically but will develop in a principled and intelligible fashion. *Id.* By interpreting *Morgan* in a way that allows for a discretionary or variable approach to selecting the appropriate standard of review, the special concurrence guarantees that the law will change in an erratic and unpredictable manner. From a practical standpoint, the special concurrence's interpretation of *Morgan* will make appeals under the Act more difficult for all parties involved.

¶ 24    Next, the special concurrence's citation to *People v. Mondragon*, 2025 IL App (2d) 250125-U, ¶¶ 35-39, regarding *Morgan*'s permissive language is misplaced. The special concurrence concludes that *Morgan* allows alternative standards of review, citing its permissive language (noting the absence of the words "shall," "will," or "must"). *Morgan*, 2025 IL 130626, ¶ 54 ("the reviewing court is not bound by the circuit court's factual findings and *may* therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature.") (Emphasis added.).  Rather, *Morgan*'s use of "may" is a residual vestige from a line of cases addressing the appropriate standard of review where testimony was presented by live witnesses and by deposition and does not reflect a permissive intent of the supreme court here. *Id.* ¶ 51. For example, *Morgan* quotes *Addison Insurance Co. v. Fay*, 376 Ill. App. 3d 85, 91

(2007), for the proposition that " 'where the evidence before a trial court consists of depositions, transcripts, or evidence otherwise documentary in nature, a reviewing court is not bound by the trial court's findings and may review the record *de novo*.' " *Id.* *Addison Insurance Co.* drew this concept from *Wolverine Insurance Co. v. Joskish*, 83 Ill. App. 3d 411, 413-14 (1980), and *Barraia v. Donoghue*, 49 Ill. App. 3d 280, 283 (1977), which both cite *Inter-Insurance Exchange of Chicago Motor Club v. Travelers Indemnity Co.*, 57 Ill. App. 2d 17 (1965).

¶ 25     The permissive language used in *Addison Insurance Co.* and *Morgan* seems to have first appeared in *Inter-Insurance Exchange*. There, the court was called upon to determine the applicable standard of review in cases where the circuit court heard evidence equally divided between oral and written testimony. The court laid out the differing, alternative standards of review that "*may*" be applied depending on whether the case was completely documentary or contained predominantly oral or predominately deposition testimony. (Emphasis added.) *Id*. at 26-27. Despite this "predominately" distinction being inapplicable in a completely documentary case, the permissive language from *Inter-Insurance Exchange* has persisted, even though cases predating *Inter-Insurance Exchange* use mandatory language. See, *e.g., Baker*, 118 Ill. at 370 (applying *de novo* review where the court has the "same facility for determining the truth or falsity of the testimony"); *In re Deskovic's Estate*, 21 Ill. App. 2d 209, 214 (1959).

¶ 26     Moreover, in *Morgan*, the supreme court went to great lengths to criticize and distinguish a deferential standard of review in solely documentary-evidence cases. *Id*. ¶ 52. The supreme court emphasized the State's concession that "there has not been one case from this court, or the appellate court, that has reviewed a circuit court's factual finding under the manifest weight of the evidence standard where no live witness testimony was presented in the circuit court." *Id.* ¶ 49. The special concurrence would disregard this admonition from the supreme court and revive the

manifest-weight-of-the-evidence standard here, because the State was the *only* party to present evidence (defendant argued only against the sufficiency of that evidence). We find this to be a distinction without a difference. Accordingly, following "more than a century" of Illinois jurisprudence, we apply *de novo* review here because the evidence is solely documentary. *Morgan*, 2025 IL 130626, ¶¶ 51-52.

¶ 27                           C. Denial of Pretrial Release

¶ 28    Pretrial release is governed by article 110 of the Code. 725 ILCS 5/110 (West 2022). Under the Code, as amended, all persons charged with an offense are eligible for pretrial release, and a defendant's pretrial release may be denied only in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e). As relevant here, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)(2)), and that no condition or combination of conditions can mitigate that risk (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 29    On appeal, defendant first argues that the detention order should be reversed because the State failed to clearly and convincingly prove that he committed offenses charged. He contends that the State failed to meet its burden, as it introduced only a police synopsis and reports, instead of more substantial evidence. We reject defendant's argument that the police synopsis and reports were insufficient to demonstrate that the proof was evident or presumption great that he committed

first degree murder. It is well-settled that a police synopsis alone is sufficient to sustain the State's burden. *People v. Horne*, 2023 IL App (2d) 230382, ¶¶ 22-24.

¶ 30    Next, defendant argues that the detention order should be reversed because the State failed to clearly and convincingly prove that he posed a real and present safety threat to the community and Lynch. Specifically, defendant claims that there was no evidence connecting Lynch to the incident and defendant's anger during the incident directed at Booker does not necessarily make him a threat to the broader community. We find this argument unpersuasive.

¶ 31    In deciding whether a defendant poses a danger, the court may consider several statutory factors, including the nature and circumstances of the offense, whether the offense is a crime of violence, the identity of persons to whose safety defendant poses a threat, and statements made by or attributed to defendant, including the circumstances surrounding them. 725 ILCS 5/110-1(g) (West 2022). Both the circuit court and this court have reviewed the police synopsis and reports. That evidence reflected that defendant had a fraught history with Booker, which resulted in an extreme display of violence—leaving Booker disemboweled on the kitchen floor. It also appears in the petition for an order of protection that defendant made earlier threats to "beat up" Booker's "friend." Moreover, after stabbing Booker, defendant left the scene and reportedly drove to the residence he believed belonged to Booker's boyfriend, so that he could stab that person too. This was Lynch's residence. Defendant even recognized Booker's boyfriend's vehicle (Lynch's vehicle), which he rammed the SUV into after failing to make contact with Lynch. Then, defendant fled the scene and led police on a vehicle chase.

¶ 32    This evidence reflects both a real and present threat to Lynch and the community. Defendant has expressed an intent to commit violence against Booker's friend and has made attempts to follow up on those threats. Although defendant does not refer to Lynch by name, the

circumstantial evidence shows that defendant believed Lynch to be romantically involved with Booker. Defendant knows where Lynch resides, the vehicle he drives, and has expressed an intent to cause Lynch immediate harm. This sufficiently shows defendant poses a real and present threat of danger to Lynch. Moreover, defendant displayed extreme violence against the mother of his six children, he displayed a history of assaultive behavior against Booker, and disregarded community safety by leading police on a vehicle chase. Defendant's actions against Booker during the emergency order of protection proceeding and in the present incident, coupled with defendant's disregard for community safety, present a picture of defendant as someone prone to violent behavior. Accordingly, the State proved, and the court properly found, that defendant satisfied the dangerousness standard.

¶ 33    Finally, defendant argues that the State did not prove, and the court erred in finding, that no combination of conditions would mitigate the threat he posed to Lynch and the community. He asserts that EHM is a substantial condition that would mitigate any threat. We disagree.

¶ 34    To this point, defendant had displayed an extreme level of anger and violence against Booker and against Lynch, though his public damage to Lynch's vehicle. With EHM, defendant would be allowed to leave his residence at least two days per week to participate in basic activities. See 730 ILCS 5/5-8A-4 (West 2022). EHM would not sufficiently mitigate the risk defendant poses to Lynch, especially outside his home. This is critical considering defendant's statements and behavior, evincing that he recognizes Lynch's vehicle. Moreover, defendant also failed to yield to police officers during a traffic stop and, instead, led them on a vehicle chase. Moreover, a proper consideration for assessing whether pretrial release conditions would reasonably ensure the safety of a witness and the community includes an assessment of "the *likelihood* of compliance by the defendant with all conditions of pretrial release." (Emphasis added.) 725 ILCS 5/110-

5(a)(3)(A)-(B) (West 2022). We do not believe that the record in this case reflects that defendant would adhere to court orders, where he has demonstrated a lack of respect for authority. As such, the State sufficiently proved, and the court properly found, that no conditions of release would mitigate the threat defendant posed to Lynch and the community.

¶ 35                                                    III. CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 37    Affirmed.

¶ 38    JUSTICE McLAREN, specially concurring:

¶ 39    While I concur with the majority's decision to affirm the judgment of the circuit court, I write separately to voice my concerns regarding the applicable standard of review. The majority finds the standard of review in the immediate matter to be a mandatory *de novo* review and I find this to be contrary to the clear language of binding precedent. As I recently detailed in my special concurrence in *People v. Mondragon*, the clearest reading of our supreme court's decision in *Morgan* is that the manifest-weight-of-the-evidence standard applies to both the circuit court's factual findings and ultimate detention decision under section 110-6.1, but a reviewing court has the option to apply *de novo* review to the factual findings if the detention hearing proceeded solely by proffer. *People v. Mondragon*, 2025 IL App (2d) 250125-U, ¶ 18-39 (McLaren, J., specially concurring).

¶ 40    Moreover, I would argue that *Morgan* may be entirely distinguishable. In *Morgan*, the State proffered documentary evidence of the crime during the detention hearing and defense counsel proffered documentary evidence that defendant had recently been diagnosed with bipolar disorder and would be seeking mental health treatment. *Morgan*, 2025 IL 130626, ¶¶ 5, 8. As a result, the trial court entered factual findings based upon competing documentary evidence. *Id*. at ¶ 9. In the

immediate matter, the only proffered evidence came from the State. Defense counsel may have argued against the *sufficiency* of that evidence, but no competing evidence was proffered. *Supra* ¶¶ 9, 12. [1] Unlike *Morgan*, the trial court in the immediate case reviewed only one set of documentary evidence and made findings based upon it. *Morgan* is silent as to whether or not its holding would apply in such a situation.

¶ 41    It would behoove the parties to relate that applying *Morgan* to instances wherein only one of the parties presented evidence and the other party argued that the evidence is insufficient is not controlled by *Morgan*. The relevant question is not the format of the evidence but whether or not all the evidence is documentary and raises a material question of fact. If there is no dispute as to the facts, the matter may be addressed as a question of law. Additionally, if all the documentary evidence presented raises a material issue of fact then the matter should be remanded back to the trial court for further proceedings. See *People v. Smith*, 191 Ill. 2d 408, 411 (2000) (holding that *de novo* review applies when the facts are not in dispute and the defendant's guilt is a question of law).

---

[1]Initially, appeals in this type of case were one-sided proffers with no evidence presented by the defendant and our review essentially took the courts findings as uncontroverted. We were analyzing the cases as if the facts were uncontroverted and then determined that the evidence was manifest. Ironically, early appeals were reviewed virtually *de novo*; *i.e.*, whether the record, as made, should be affirmed as a matter of law.